**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF GUAM**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiffs,<br><br>vs.<br><br>**UNIT H-310 APUSENTO GARDEN, DESCRIBED AS LOT 3381-9NEW-NEW-H310,**<br><br>**UNIT B-207 APUSENTO GARDEN, DESCRIBED AS LOT 3381-9NEW-NEW-B207,** and<br><br>**APPROXIMATELY $6,240.65 IN UNITED STATES CURRENCY,**<br><br>Defendants. | Civil Case No. 07-00006<br><br>**ORDER AND OPINION RE: MOTION FOR RELIEF FROM JUDGMENT** |

1  Before the court is a Motion for Relief from Judgment filed by Goodwind Development
2  Corporation ("GDC"). *See* Dkt. No. 67. GDC requests that the court grant it relief from the Default
3  Judgment and Final Order of Forfeiture that the court issued on June 3, 2010. *See id.* After
4  reviewing the parties' filings, and relevant case law and statutes, the court hereby **DENIES** the
5  Motion for Relief from Judgment and issues the following opinion.
6  //
7  //

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On March 30, 2007, the Government filed a Verified Complaint of Forfeiture ("the Complaint"), as well as concomitant notices of *lis pendens*, against five pieces of real property owned by Romy Miclat and Aniceta Miclat ("the Defendant Properties"). *See* Dkt. Nos. 1–6. The Government alleged that the Defendant Properties were subject to forfeiture because they were derived from proceeds traceable to violations of 18 U.S.C. §§ 1343 (wire fraud), 1344 (bank fraud), 1956 (money laundering), and several Guam laws. Dkt. No. 1 at 2.

### A. Basis of the Forfeiture Action

Romy Miclat and Aniceta Miclat ("the Miclats") owned ninety-nine percent of JALE Management Information Services, which was doing business as Information and Data Services ("IDS"). Dkt. No. 20, Exh.1 at 4. IDS provided payroll services to businesses on Guam and Saipan and charged processing fees for such services. *Id.* The Miclats derived almost all of their income from IDS. *Id.* at 7.

From at least 2001 to 2006, IDS engaged in a continuous check kiting scheme.[1] *See id.* at 5–6. The check kiting scheme enabled the Miclats to conceal the fact that they were taking more

---

[1] A check kiting scheme "involves the use of the 'float,' which is the time between which a check is deposited and when the check clears the financial institution from which it is drawn" to create non-existent funds. Dkt. No. 20, Exh. 1 at 5. To illustrate:

> [O]n October 2, 2006, and thereafter, IDS made nine deposits to the Bank of Guam accounts totaling approximately $1.6 million. Bank of Guam presented the checks for payment or credit to Bank of Hawaii on October 3, 2006. On October 3, 2006, IDS deposited 18 checks drawn on the Bank of Guam, to an IDS account at the Bank of Hawaii. The 18 checks totaled exactly the same amount as the 9 checks and electronic transfers deposited on October 2, 2006, at the Bank of Guam. On October 3, 2006, the 18 checks (deposits/credits) offset the nine checks and electronic transfers (debits) in a IDS account at the Bank of Hawaii. On October 5, 2006, Bank of Hawaii presented the 18 checks to Bank of Guam for payment or credit. As a result, IDS received $1.6 million credit in their Bank of Guam account for two days, through use of these kiting transfers.

*Id.* at 5–6.

than their rightful share of processing fees from IDS clients. *See id.* at 6. Without this check kiting scheme, the IDS business would have failed. *See id.* at 7.

In 2002, Romy Miclat obtained a loan from Wells Fargo Financial ("Wells Fargo") and secured the loan with the Defendant Properties. *Id.* at 7–8. Romy Miclat then used IDS funds make payments on the Wells Fargo loan. *See id.* at 8.

### B. Wells Fargo Sale of Defendant Properties

On November 30, 2007, the Government and Wells Fargo filed a stipulated motion to sell the Defendant Properties, and the court granted the motion. *See* Dkt. Nos. 8, 10. On February 15, 2008, Wells Fargo sold three properties: Unit 307 Villa Punta Isa, Described as Lot 5370-3-1; Lot No. 2-2, Tract No. 2022, Municipality of Asan-Piti, Guam; and Lot No. 19-1, Tract No. 292, Municipality of Yigo, Guam. *See* Dkt. No. 14 at 3–4. The sales garnered a total of $359,260.00 in proceeds. *See id.* at 5. After accounting for Wells Fargo's mortgage debt and associated fees, $6,240.65 remained and was deposited with the court. *See id.* at 8.

On March 12, 2008, the Government filed an Amended Verified Complaint of Forfeiture ("the Amended Complaint"), in which it named Unit H-310 Apusento Garden, Described as Lot 3381-9NEW-NEW-H310; Unit B207 Apusento Garden, Described as Lot 3381-9NEW-NEW-B207; and Approximately $6,240.65 in United States Currency as the defendants (collectively, "the Amended Defendant Properties," or, when referring only to the real property defendants, "the Apusento Defendant Properties").

### C. Entry of Default Judgment and Final Order of Forfeiture

The Government filed a Motion for Default Judgment and a Request for Entry of Default on November 4 and 9, 2009, respectively. *See* Dkt. Nos. 27, 30. The court denied the motion and the request because the Government directed the motion and the request at natural persons, and failed to provide evidence of published notice. *See* Dkt. No. 32 at 2.

Pursuant to the court's order, the Government served direct notice of the forfeiture action on the Miclats and published notice of the forfeiture action in the Pacific Daily News for three

consecutive weeks. *See* Dkt. No. 44 at 3. The published notice indicated that the deadline for filing a claim was February 18, 2010. *See id.* at 7–9. Three claimants responded in a timely manner by filing Verified Notices of Claim and Answers to the Amended Complaint. *See id.* at 4.

On April 19, 2010, the Government again filed a Request for Entry of Default, and this time, the Clerk of Court entered default against the Amended Defendant Properties and all claimants (with the exception of the three timely claimants). *See* Dkt. Nos. 43, 45.

On May 21, 2010, the Government filed another Motion for Default Judgment of Forfeiture. *See* Dkt. No. 46. The court granted the motion and issued a Default Judgment and Final Order of Forfeiture ("the Final Order of Forfeiture") against the Amended Defendant Properties. *See* Dkt. No. 47. In the Final Order of Forfeiture, the court decreed that "[a]ll persons claiming any right, title or interest in or to the [Amended Defendant Properties were] held in default, with the exception of [the three claimants that filed timely claims,]" and forfeited the properties to the Government. *Id.* at 2. The court further ordered the United States Marshals Service ("USMS") to dispose of the properties in accordance with law.[2] *Id.*

### D. <u>Basis of GDC's Claim to Apusento Defendant Properties</u>

GDC was a customer of IDS, and consequently fell prey to the Miclats' check kiting scheme. *See* Dkt. No. 67 at 2. On or around November 2006, GDC sued the Miclats in the Superior Court of Guam to recover approximately $39,000 in stolen payroll funds. *See id.*; *see also* Dkt. No. 55 at 13–14 (summonses dated November 20, 2006).

On January 22, 2007, GDC's attorney, Daniel Berman ("Atty. Berman"), wrote a letter to former Assistant United States Attorney Jeffrey Strand. *See* Dkt. No. 53 at 11. In the letter, Atty. Berman requested information about the Miclats' whereabouts, so that he could serve them with the civil complaint and summonses. *See id.* Then, on February 1, 2007, Atty. Berman's office faxed

---

[2] On December 6, 2010, the Government filed a Motion to Transfer Proceeds of Sale (that is, the Approximately $6,240.65 in U.S. Currency named as a defendant), and the court granted the Motion. *See* Dkt. Nos. 50, 51, 72. The Government acknowledged receipt of the proceeds on August 4, 2011. *See* Dkt. No. 73. Thus, the Apusento Defendant Properties are the only defendants that are pending disposition.

a breakdown of GDC's total payroll losses to Special Agent Kenneth Klocke of the Federal Bureau of Investigation.[3] *See id.* at 16–19.

On September 19, 2007, GDC obtained a default judgment against the Miclats in the Superior Court civil suit ("the GDC judgment"). *See id.* at 9. On October 8, 2007, GDC proceeded to file an Abstract of Judgment at Guam's Department of Land Management to create a lien against all of the Miclats' recorded properties ("the Judgment Lien"). *See id.* at 5–7.

On September 7, 2010, the USMS contacted Atty. Berman's office. *See* Dkt. No. 55 at 34. The USMS indicated that they were preparing to sell the Apusento Defendant Properties, and requested the balance owed on the GDC judgment. *See id.* Atty. Berman responded via email and indicated that the balance was $54,671.53. *See id.* at 33. The USMS contacted Atty. Berman's office again on October 12, 2010, and requested another updated balance of the GDC Judgment.[4] *See id.*

### E. Hindered Sale of Defendant Properties

On February 24, 2011, the Government filed a Motion for an Order of Forfeiture as to Any Interests Held by GDC. *See* Dkt. No. 52. Apparently, the Government accepted offers for the Apusento Defendant Properties, but could not close the sales because of the Judgment Lien. *See id.* at 4.

On February 25 and 28, 2011, respectively, GDC filed a Verified Notice of Claim and a Motion to Extend Claim Deadline and to Dismiss Complaint. *See* Dkt. Nos. 53, 54. The

---

[3] Atty. Berman argues that the letter and the fax demonstrate that "GDC repeatedly notified the USA's Department of Justice Assistant U.S. Attorney and its Federal Bureau of Investigation of its request for vigorous prosecution of the Miclats, recovery of stolen payroll and served notice of GDC's claim in order for justice and reimbursement of the stolen money." Dkt. No. 67 at 2. After reviewing the letter and faxes, the court finds that they did not serve as a claim or notice of a claim to the forfeiture proceeds; a claim must comply with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule G").

[4] Based on the inquiries from the USMS, "GDC concluded that it followed logically that a distribution of the funds arising from prosecution of Miclats would be distributed to GDC, . . ." Dkt. No. 67 at 4. The court disagrees with GDC's conclusion. GDC had not filed a claim as required under Supplemental Rule G, and thus has no right to a distribution of the forfeiture proceeds.

1 Government responded by filing a Motion to Dismiss Claim. *See* Dkt. No. 58.

2 On April 29, 2011, the court issued an order stating that it could not act on the pending motions because the Final Order of Forfeiture was a final judgment, and any claim GDC had was held in default. *See* Dkt. No. 66 at 2.

On May 13, 2011, GDC filed the Motion for Relief from Judgment ("the Motion"). *See* Dkt. No. 67. The Government filed a response on May 18, 2011, and GDC filed a reply on May 27, 2011. *See* Dkt. Nos. 69, 70.

## II. DISCUSSION

GDC moves the court for relief from the Final Order of Forfeiture pursuant to Federal Rule of Civil Procedure 60. In pertinent part, Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b). GDC asserts that relief from judgment is warranted based on excusable neglect or surprise, and misconduct by the U.S Attorney's Office. *See* Dkt. No. 67 at 7.

The Government does not address GDC's Rule 60 arguments, but instead opposes the Motion on the ground that GDC, as a victim of a crime, does not have standing to challenge the forfeiture. *See* Dkt. No. 69 at 1. GDC asserts that it has standing, not as a victim,[5] but as a "secured

---

[5] If GDC tried to argue for standing as a victim of a crime, it would be futile; a victim of a crime does not have standing to challenge civil forfeiture actions. *See United States v. Approx. $133,803.53 in U.S. Currency*, 683 F. Supp. 2d 1090, 1095 (E.D. Cal. 2010) ("Congress's creation of a remission process for crime victims and explicit delegation of responsibility to the Attorney General over petitions filed pursuant to that process, combined with the absence of statutory language negating the application of the prudential standing

Page 6 of 10

claim holder with a lien upon the [Miclats'] real property." *See* Dkt. No. 70 at 1.

## A. GDC Does Not Have Standing

Standing is a threshold issue that the court must address before it reaches the merits of the Motion. *See United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004). To establish Article III standing in a forfeiture action, the claimant must have "a sufficient interest in the property to create a case or controversy." *Id.* (citing *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003)). "The claimant's burden under Article III is not a heavy one; the claimant need demonstrate only a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake." *Id.*

To have a cognizable interest, the claimant must acquire the interest in forfeitable property before the government asserts its right to forfeiture. *See United States v. One 1965 Cessna 320C Twin Engine Airplane*, 715 F. Supp. 808, 811 (E.D. Ky. 1989) ("The property interest of a claimant in a forfeiture case must predate the right to forfeiture asserted by the United States."); *see also United States v. $319,603.42 in U.S. Currency*, 829 F. Supp. 1223, 1224 (D. Or. 1992) (finding that the judgment creditor did not have standing because she did not perfect a lien on the specific property before it was seized by the government); *United States v. 2659 Roundhill Dr. (Roundhill*

---

doctrine to potential claims of victims, compels the conclusion that the claimant in this case lacks prudential standing. *United States v. Real Property Located at 730 Glen-Mady Way ('Glen-Mady')*, 590 F. Supp. 2d 1295, 1303 (E.D. Cal. 2008) (holding that victims/investors in a fraudulent scheme lacked prudential standing to file a claim in a civil forfeiture action under § 981); *see United States v. Wilson*, 640 F. Supp. 2d 1257, 1262 (E.D. Cal. 2009) (holding that victims/investors in a fraudulent scheme lacked prudential standing to file a claim in criminal forfeiture action). Claimant Flagstar's interest is not within the zone of interest Congress intended to protect within this civil forfeiture proceeding. To decide otherwise would convert this forfeiture case into a trust administration proceeding and 'shun the procedures Congress deliberately enacted to vindicate third-party claims.' [*United States v.*] *Lazarenko*, 476 F.3d [642,] 652 [(9th Cir. 2007)]; *Glen-Mady*, 590 F. Supp. 2d at 1303; *Wilson*, 640 F. Supp. 2d at 1262; *see United States v. Bright*, 353 F.3d 1114, 1124 (9th Cir. 2004) (holding that requiring district courts to attempt to apply forfeited funds [to total amount of restitution] would conflict with the grant of discretion § 981(e) expressly and specifically gives to executive actors); *United States v. Schwimmer*, 968 F.2d 1570, 1584 (2d Cir. 1992) (referring to similar RICO criminal forfeiture provisions as 'a statute that states that the Attorney General, and not the judiciary, shall make decisions about how to divide up the funds in order to compensate victims . . . . Because Congress has chosen to allocate to the Attorney General the power to remit funds for victim compensation, it is inappropriate in the context of this case to relax conceptions of property rights in order to permit courts to compensate victims'); . . .") (second alteration in the original).

*I)*, 194 F.3d 1020, 1027 (9th Cir. 1999) (holding that until the government's claim is adjudicated, its interest only dates back to the date it recorded its *lis pendens*). The court must "look to state law to determine the 'existence and extent' of a claimant's property interest." *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1119–20 (citing *United States v. 1980 Lear Jet*, 38 F.3d 398, 402 (9th Cir. 1994)).

GDC asserts that it has a secured interest—and thus standing—in the Apusento Defendant Properties as the holder of the Judgment Lien.[6] *See* Dkt. No. 70 at 1. However, GDC did not perfect the Judgment Lien until October 8, 2007—more than six months after the Government initiated this forfeiture action. Thus, whatever interest GDC may have derived from perfecting the Judgment Lien, it is not a cognizable interest that confers standing. *See One 1965 Cessna*, 715 F. Supp. at 811.

Furthermore, at the time the Government initiated the forfeiture action, GDC was, at best, a general unsecured creditor with a claim against the Miclats that had yet to be adjudicated. It is well established that an unsecured creditors does not have standing to challenge a civil forfeiture action. *See United States v. $20,193.39 U.S. Currency*, 16 F.3d 344, 346 (9th Cir. 1994) (citing *United States v. Four Million, Two Hundred Fifty-Five Thousand*, 762 F.2d 895, 907 (11th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986); *United States v. $47,875.00 in U.S. Currency*, 746 F.2d 291, 294 (5th Cir. 1984); *United States v. $3,799.00 in U.S. Currency*, 684 F.2d 674, 678 (10th Cir. 1982); *United States v. 127 Shares of Stock in Paradigm Mfg., Inc.*, 758 F. Supp. 581, 583 (E.D. Cal. 1990)). Thus, GDC does not have standing as an unsecured creditor either.

---

[6] The Judgment Lien was created pursuant to section 21607 of title 7 of the Guam Code Annotated. In pertinent part, section 21607 provides:

> An abstract of the judgment or decree of any court of record of Guam, or of the United States, the enforcement of which has not been stayed on appeal, certified by the clerk of the Court where such judgment or decree was rendered, may be filed with the Director of Land Management and from such filing the judgment or decree becomes a lien upon all the real property of the judgment debtor, not exempt from execution, owned by him at the time, or which he may afterwards and before the lien expires acquire.

7 GUAM CODE ANN. § 21607.

1    Accordingly, GDC does not have an interest in the Apusento Defendant Properties that
2 creates a case or controversy, and thus does not have standing to challenge the forfeiture of the
3 properties.[7]

## III. CONCLUSION

As discussed in the foregoing, the court finds that GDC lacks standing to challenge the instant civil forfeiture action. Accordingly, the court hereby **DENIES** the Motion for Relief From Judgment.[8]

Furthermore, the Default Judgment and Final Order of Forfeiture applies to GDC. Thus, the court denies the following motions as moot: Motion for an Order of Forfeiture (Dkt. No. 52), Motion For an Order to Extend Claim Deadline (Dkt. No. 54), Motion to Dismiss Claim (Dkt. No. 58),

---

[7] Even if GDC had standing, it does not have a viable claim against the Apusento Defendant Properties. The instant forfeiture action is governed by the Civil Asset Forfeiture Reform Act ("CAFRA"). Under CAFRA, "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1). GDC contends that it is an "innocent owner" of the Judgment Lien, and therefore its interest is not subject to forfeiture. *See* Dkt. No. 54 at 18.

CAFRA provides two paths to innocent ownership, one applies to a property interest acquired before the conduct giving rise to the forfeiture, and the other applies to a property interest acquired after the conduct giving rise to the forfeiture. *See* 18 U.S.C. § 983(d)(2) and (3). The latter would apply in this case. Thus, to qualify as an innocent owner, GDC must demonstrate that at the time it acquired the Judgment Lien: (1) it was "a bona fide purchaser or seller for value" and (2) it "did not know and was reasonably without cause to believe that the property was subject to forfeiture." *See* 18 U.S.C. § 983(d)(2).

GDC was not a "bona fide purchaser for value" because it gave nothing of value to obtain the Judgment Lien; the Judgment Lien was merely a vehicle to collect on the Default Judgment. *See* Stefan D. Cassella, *The Uniform Innocent Owner Defense to Civil Asset Forfeiture: The Civil Asset Forfeiture Reform Act of 2000 Creates a Uniform Innocent Owner Defense to Most Civil Forfeiture Cases Filed by the Federal Government*, 89 Ky. L.J. 653, 693 n.173 (2000–2001) ("a judgment creditor who obtains a lien on [forfeitable] property [is] not a bona fide purchaser because he [gives] nothing of value in exchange for the lien, irrespective [of] how the antecedent debt came into existence.") (citing *United States v. BCCI Holdings (Luxembourg), S.A.*, 69 F. Supp. 2d 36, 62 (D.D.C. 1999)). Moreover, GDC knew or had reason to believe that the Apusento Defendant Properties were subject to forfeiture because the Government filed notices of *lis pendens*, which gave GDC constructive notice of the forfeiture action. *See Pelowski v. Taitano*, 2000 Guam 34 ¶ 21 ("Constructive notice which is afforded by the recording of a notice of lis pendens is notice that an action which affects the title or right of possession of designated real property has been instituted and is pending.") (citing *Garcia v. Pinhero*, 70 P.2d 675, 676 (Cal. Dist. Ct. App.1937) (internal quotation marks omitted). Accordingly, GDC does not qualify as an "innocent owner," and thus does not have a viable claim.

[8] Although GDC cannot seek relief in this court, GDC may pursue other avenues of relief. *See* 28 C.F.R. § 9.8 (providing that a victim of a crime may file a petition for remission); *supra* note 5; *see also* Dkt. No. 69 at 2.

Agreement of Hearing Date (Dkt. No. 59), and Request for Hearing (Dkt. No. 74). In addition, the court strikes GDC's Verified Notice of Claim from the record. *See* Dkt. No. 53.

Finally, the USMS shall dispose of the Apusento Defendant Properties in accordance with the Final Order of Forfeiture. *See* Dkt. No. 47. Upon the sale of said properties, the court will set a hearing to determine what is owed to the three timely claimants and make the appropriate disposition.

**SO ORDERED.**



        **/s/ Frances M. Tydingco-Gatewood**
           **Chief Judge**
        **Dated: Aug 24, 2011**